Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Ann T. Wick
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  vs.<br><br>KOBY DON WILLIAMS,<br><br>  Defendant. | Case No.: 2:23-CR-0024-TOR<br><br>United States' Sentencing Memorandum |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Ann T. Wick, Assistant United States Attorney for the Eastern District of Washington, submits this memorandum setting forth the government's position at sentencing. The government recommends that the Court sentence Defendant to a term of imprisonment within the advisory guideline range, followed by a 10-year term of supervised release, in the above-captioned case.

Gov.'s Sentencing Memorandum – 1

# INTRODUCTION

While an Immigration and Customs Enforcement agent – a supervisor even, Defendant responded to a decoy advertisement of a 13-year-old prostitute. Over the course of four days, Defendant called and texted "Rebecca," discussing prices, exchanging pictures, and arranging to meet for "sex obviously." PSR ¶ 20. More than once, Defendant mentioned his law enforcement status and assured "Rebecca" that "cops need people like" her. *Id*. When Defendant arrived at "Rebecca's" hotel room as arranged, he was arrested; Defendant was carrying his loaded government firearm and ICE badge, and immediately offered a statement to the effect that he worked human trafficking. PSR ¶ 22. His work vehicle in the hotel parking lot contained $4,075 in cash, two bottles of vodka, and bottles of pills, including generic Viagra. PSR ¶ 24, Trial Evidence.

A jury found Defendant guilty after trial. At trial, Defendant testified at length, telling the jury all kinds of things, including that he did not believe that "Rebecca" was a minor. PSR ¶¶ 34-39. In order to find Defendant guilty, the jury necessarily had to find Defendant materially lied during his testimony.

The United States and Defendant both objected to the initial Presentence Investigation Report (hereinafter "PSR"). ECF Nos. 93, 94. The United States asserted that Defendant's offense level calculations needed to be adjusted to reflect enhancements for obstruction and the involvement of a commercial sex act and that

Gov.'s Sentencing Memorandum – 2

certain offense behavior needed to be included in relevant conduct. ECF No. 93. Defendant objected to application of an enhancement for Defendant's abuse of a position of trust and sought to excise certain information that has no effect on the guideline calculations. ECF No. 94. The updated PSR reflected application of enhancements for obstruction[1] and abuse of trust, but not for the involvement of a commercial sex act. ECF Nos. 96, 97. The United States does not object to the updated PSR.

## LEGAL ANALYSIS

The Ninth Circuit has set forth a basic framework which the district courts should follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1)  Courts are to begin all sentencing proceedings by correctly determining the applicable sentencing guidelines range, precisely as they would have before *Booker*.

(2)  Courts should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties. Courts may not presume that the guidelines range is reasonable. Nor should the guidelines factors be given more or less weight than any other. They are simply to be treated as one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence.

(3)  If a court decides that a sentence outside the guidelines is warranted, then it must consider the extent of the deviation and ensure that the

---

[1] The United States notes that the obstruction enhancement is accurately reflected at ¶ 49 of the PSR and respectfully suggests that ¶ 41 should be updated consistent with ¶ 49.

Gov.'s Sentencing Memorandum – 3

justification is sufficiently compelling to support the degree of the variance.

(4)   Courts must explain the selected sentence sufficiently to permit meaningful appellate review.

*United States v. Carty*, 520 F.3d 984, 991-92 (9th Cir. 2008).

**SENTENCING CALCULATION AND IMPOSITION OF SENTENCE**

**I.   United States Sentencing Guidelines Calculation**

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

A.   Offense Level Calculation

The updated PSR (ECF No. 96) correctly calculated Defendant's total offense level as 34. PSR ¶ 53. Within that calculation are enhancements for Defendant's abuse of a position of trust and obstruction of justice. Defendant absolutely used his federal law enforcement status in the commission of his crime and to try to conceal it when caught. He used his position of trust to reassure "Rebecca" that he was a good guy, that he was a safe john, and that he was not going to arrest her. When arrested, Defendant tried to portray himself as a human trafficking investigator; when that failed, Defendant still attempted to use his federal status and career to bolster the idea that he was a good Samaritan, trying to save someone. In other words, he tried to use his job to conceal his crime.

Gov.'s Sentencing Memorandum – 4

Defendant also absolutely obstructed justice in the manner contemplated by the guidelines when he took the stand and testified falsely. This is not merely argument by the government; the jury had to find material parts of Defendant's testimony false in order to convict him of the crime of attempted online enticement of a minor. This Court has the benefit of having sat through Defendant's testimony and has ready access to a transcript if necessary. The jury could not have believed Defendant's testimony in material respects and also have found Defendant guilty as charged.

Thus, the offense level in the updated PSR is correct, and Defendant's objections thereto should be overruled.

### B. Criminal History Calculation

The PSR correctly calculated the defendant's criminal history category as Category I. PSR ¶ 60.

### C. Advisory Guideline Range

Based upon a total offense level of 34 and a criminal history category of I, the advisory guideline imprisonment range is 151-188 months. PSR ¶ 114.

## II. Departures

The United States does not recommend a departure from the advisory guideline range, nor were any factors warranting a departure identified in the PSR. ECF No. 96 ¶ 130.

Gov.'s Sentencing Memorandum – 5

### III. Imposition of a Sentence under 18 U.S.C. § 3553

#### A. 18 U.S.C. § 3553(a) factors

##### 1. The nature and circumstances of the offense

The nature and circumstances of Defendant's offense warrants a sentence within the guidelines range, followed by a 10-year term of supervised release. Setting aside for a moment that Defendant was at the time a federal law enforcement agent and supervisor, his crime is still reprehensible. Defendant saw a post warning guys to stay away from a 13-year-old prostitute, and less than two hours later Defendant was calling and texting the number for the young teen. It was immediately clear in Defendant's texts that he was interested in "Rebecca" for purposes of sex, and the communications that ensued were consistent with that intent. He pursued her for four days and showed up to the hotel with an abundance of alcohol, cash, and generic Viagra.

The Court should bear in mind that "Rebecca" was being held out as a prostitute at the age of 13, meaning that her life was such that she was already sexually active and being sexually exploited by this tender age. Defendant did not care what caused "Rebecca" to be a prostitute by the time she would have been in the seventh grade; or, if he did, it did not trump his own wants and desires. Instead, "Rebecca" was a commodity Defendant could use.

The fact that Defendant did all of this as a federal law enforcement officer, entrusted with supervisory duties in his agency, makes his crime that much worse. Sworn to uphold the law, Defendant instead broke it. With a duty to protect and serve, Defendant sought to exploit and victimize. Rather than report the possible sex trafficking of a minor, Defendant used his law enforcement status to make himself appear safer and more trustworthy to a teen prostitute and, later, to try to conceal his crime. These circumstances warrant more than the mandatory minimum 10-year sentence, and the advisory guideline range accurately reflects the particular nature and circumstances of Defendant's crime.

### 2. The history and characteristics of the defendant

Defendant's history and characteristics also support a within-guidelines sentence. Despite 20 years in federal law enforcement, Defendant is the kind that gives all law enforcement a bad name. Not for the first time, he tried to use his law enforcement status to get out of his present predicament. He did it before, when he struck a parking lot sign and caused it to fall on a parked vehicle; despite fleeing the area, he was located and said he was in the parking lot working on a case when circumstances suggested otherwise. *See* ECF Nos. 35; sealed exhibit 2 to ECF No. 35; and 36. Worse, he used his law enforcement status as a beacon of trust, to suggest to a purported 13-year-old prostitute that he was safe and wouldn't arrest her. Worse yet, he said law enforcement "needs people like [her]."

Gov.'s Sentencing Memorandum – 7

While Defendant would like the Court and others to see him as a loving father and imperfect husband, and he is probably both of those things at times, it is worth noting that Defendant used one of his minor children as part of his enticement of "Rebecca," suggesting that he would show his son how sex was done by bringing him along. Then, Defendant permitted his minor children to attend trial – all but cross examination of Defendant, when Defendant's explanations for his actions were discredited. In other words, even then, Defendant used his children as a prop, until they might have seen for themselves Defendant's web of lies coming apart. That is not to say Defendant does not love his children; rather, it demonstrates: Defendant's manipulation of facts knows no bounds.

According to the PSR, Defendant's troubles with mental health and alcohol abuse date back over ten years. PSR ¶¶ 93, 98. Almost two years prior to committing his crime, Defendant completed a two-week inpatient treatment program. PSR ¶ 100. Defendant also attended other treatment modalities in the years before his crime. *See, e.g.*, PSR ¶ 81. Treatment notwithstanding, it appears as though Defendant continued to drink excessively, on and off the job, often while armed, creating another kind of danger. While it may be that Defendant was at a very low point in his life the summer of 2022, he was nevertheless interested in and willing to exploit a young teen to satisfy his own sexual desires. No amount of alcoholism or depression or self-pity can justify his actions.

Gov.'s Sentencing Memorandum – 8

3. <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.</u>

Crimes involving the sexual exploitation of a minor child are among the most serious and reprehensible crimes that can be committed. A sentence within the guideline range, followed by ten years of supervised release, recognizes this, promotes respect for the law, and is just punishment.

4. <u>The need for the sentence imposed to afford adequate deterrence and to protect the public.</u>

A guideline prison sentence and ten-year term of supervised release protects the public and serves the goal of general and specific deterrence. The public is protected from Defendant, and such a sentence puts other offenders on notice.

5. <u>The kinds of sentences available</u>

The Court may sentence Defendant to a term of prison of no less than 10 years, up to life, followed by a term of supervised release of not less than five years. PSR ¶¶ 113, 115.

6. <u>The established sentencing range</u>

Based upon a total offense level of 34 and a criminal history category of I, the advisory guideline imprisonment range is 151-188 months. PSR ¶ 114.

7. <u>The need to avoid unwarranted sentence disparities</u>

The government's recommended, within-guideline sentence does not cause any disparity.

Gov.'s Sentencing Memorandum – 9

        8.    <u>The need to provide restitution to any victims of the offense</u>

This is not an issue.

        B.    <u>Application of the Guidelines in Imposing a Sentence under 18 U.S.C. § 3553(b)</u>

The guidelines, formerly mandatory, now serve as one factor among several that courts must consider in determining an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). It remains, however, that "the Commission fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Id*. at 108-09 (internal quotation marks omitted). Thus, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id*. (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)).

**IV.**    **$5,000 Special Assessment of the JVTA**

The United States seeks the imposition of a $5,000 special assessment pursuant to the Justice for Victims of Trafficking Act (JVTA). Assessments paid under the JVTA are deposited into the Domestic Trafficking Victims Fund for grants to enhance programs that assist trafficking victims and provide services for victims of child pornography.

Gov.'s Sentencing Memorandum – 10

Under the JVTA, the Court "shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under ... (3) chapter 110 (relating to sexual exploitation and other abuse of children)." 18 U.S.C. § 3014(a)(3). In imposing a JVTA assessment, the non-indigency of a defendant is the governing deliberation and the statute does not require the court to consider the factors enumerated in 18 U.S.C. § 3572 with respect to the entry of a non-JVTA fine. *See generally* 18 U.S.C. § 3014 (no reference to or requirement upon the court to evaluate the 18 U.S.C. § 3572 factors when imposing a JVTA assessment).

Whether a defendant is non-indigent for the purposes of a JVTA assessment is determined not by a static snapshot of a defendant's financial condition at the time of sentencing, but instead should be based on considerations of a defendant's current and future financial condition.

> [A] district court must resolve two basic questions in assessing the defendant's indigency: (1) Is the defendant impoverished now; and (2) if so, does the defendant have the means to provide for himself so that he will not always be impoverished?
>
> …
>
> Because the defendant's obligation to pay persists for at least twenty years after his sentencing, it would make little sense for the district court to consider only the defendant's financial condition at the time of sentencing. That snapshot in time may not accurately represent the defendant's condition five, ten, or twenty years after sentencing. Rather, the defendant's employment prospects and earnings potential are probative of his ability to pay the assessment—and are fair game for the court to consider at sentencing.

Gov.'s Sentencing Memorandum – 11

*United States v. Shepherd*, 922 F.3d 753, 758 (6th Cir. 2019)

In this matter, Defendant is non-indigent for the purposes of imposing a JVTA assessment. Although not singularly dispositive, the government first notes that Defendant's counsel is retained, not appointed. *See Shepherd*, 922 F.3d at 759 (fact that defendant is represented by appointed counsel is "probative but not dispositive" of indigence under § 3014, because indigence is not the standard for appointment of counsel). Second, Defendant enjoyed steady employment for over two decades, first in the military from 1993 to 1999, then with ICE for nearly 22 years. PSR ¶¶ 103, 106. Even taking Defendant's financial disclosures at face value (they do not appear to be verified), it appears as though most of Defendant's debt shared with his wife can be satisfied through the sale of their house. PSR ¶¶ 109-111.

Furthermore, Defendant has the education and ability to work upon release from prison. For example, Defendant previously represented to the magistrate court the desire and ability to earn considerable income from transporting shipping containers from the West side of the state to places like Montana.

Lastly, the government submits that Defendant is not indigent for purposes of the JVTA due to his expected Bureau of Prisons financial responsibility earnings during his period of incarceration. A typical judgment imposing a monetary penalty requires a defendant to participate in the Bureau of Prison's Inmate Financial Responsibility Program and pay $25 per quarter towards any outstanding monetary

Gov.'s Sentencing Memorandum – 12

penalty. A 12-year sentence, for example, would allow Defendant to pay $1,200 through the IFRP by the time he is released to supervised release.

$5,000 is not that much more than the cash Defendant had in his car, ready to pay for sex with a 13-year-old girl. On the facts and circumstances of this case, the Court could reasonably impose a fine. Rather than request a fine, the government respectfully requests the Court impose the JVTA special assessment.

## **CONCLUSION**

Application of 18 U.S.C. § 3553 supports a sentence within the guideline range, followed by ten years of supervised release, for Defendant's commission of the crime of attempted online enticement. The government submits that such a sentence is sufficient, but not greater than necessary, to accomplish the goals of sentencing, and that a lesser sentence is not supported by application of the 18 U.S.C. § 3553(a) factors.

Respectfully submitted: August 29, 2024.

                                              Vanessa R. Waldref
                                              United States Attorney

                                              *s/ Ann T. Wick*
                                              Ann T. Wick
                                              Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to defense counsel of record.

<u>s/ Ann T. Wick</u>
Ann T. Wick
Assistant United States Attorney

Gov.'s Sentencing Memorandum – 14